IMAN REZA (State Bar No. 245094)
**CUMMINS & WHITE, LLP**
2424 S.E. Bristol Street, Suite 300
Newport Beach, California 92660
Telephone:  (949) 852-1800
Facsimile:   (949) 852-8510
IReza@cwlawyers.com

Richard J. Oparil (admitted *pro hac vice*)
**PATTON BOGGS LLP**
2550 M Street, NW
Washington, DC 20037
Telephone:  (202) 457-6000
Facsimile:   (202) 457-6315
roparil@pattonboggs.com

Attorneys for Plaintiffs
SIMON DAVIES and DAVID WARNOCK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## (Western Division - Los Angeles)

| | |
|---|---|
| SIMON DAVIES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GETFUGU, INC., *et al.*,<br><br>Defendants. | Case No. 2:09-cv-08724 GHK (FMOx)<br><br>**SECOND AMENDED RICO STATEMENT** |

Pursuant to this Court's Order Regarding RICO Cases, Plaintiffs Simon Davies and David Warnock (collectively referred to as "Plaintiffs") file this Second Amended Rico Statement in connection with their claims arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18, U.S.C. § 1961, *et seq*.

**1.    State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).**

Plaintiffs allege that the unlawful conduct at issue violates of 18 U.S.C. §§ 1962(c) and 1962(d).

**2.     List each defendant and state the alleged misconduct and basis of liability of each defendant.**

Based on the information currently available to Plaintiffs, Ex. A hereto lists each defendant and their alleged misconduct.  The following chart is a summary thereof.

| Defendant | Alleged Misconduct ¶ |
| --- | --- |
| GetFugu, Inc. | 123-75, 177-80, 182 |
| Carl Freer | 4, 40-175, 177-80, 182 |
| Alan J. Bailey | 5, 164, 175, 177-80, 182, 186 |
| Begbies Traynor Group | 6, 11-13, 17, 26, 30, 75, 78, 99-101, 110, 112, 131-33, 175 |
| Michael Carrender | 7, 49, 53, 55, 60-61, 66 |
| Mark Champion | 8, 174-75, 177-80, 182, 186 |
| Corporate Valuation Advisors, Inc. | 127-30, 137-40 |
| Dragon Phoenix (China) Ltd. | 10, 93, 106 |
| David Rubin & Partners | 6, 11-13, 17, 26, 30, 75, 78, 99-101, 110, 112, 131-33, 175 |
| Paul Davis | 6, 11-13, 17, 26, 30, 75, 78, 99-101, 110, 112, 131-33, 175 |
| Timothy Dolder | 6, 11-13, 17, 26, 30, 75, 78, 99-101, 110, 112, 131-33, 175 |
| Stefan Eriksson | 14, 50-55, 57-72, 75, 87-89, 123 |
| Anneli Freer | 15, 55-56 |
| Ericka Freer | 16, 151, 176 |
| David Hudson | 6, 11-13, 17, 26, 30, 75, 78, 99-101, 110, 112, 131-33, 175 |
| Jason Irwin | 18, 106, 110, 113, 123-75 |
| Richard Jenkins | 19, 92, 102, 111-14, 123-75, 177-80, 182, 186 |
| Juanita Group Ltd. | 55 |
| Ivan D. Kozhuharov | 21, 123-75, 177-80, 182, 186 |
| Donald A. Kurz | 22, 175, 177-80, 182, 186 |
| Mark LaPresle | 23, 125, 161, 174, 175, 177-80, 182, 186 |
| Mikael Ljungman | 24, 90, 92-93, 98, 106, 114, 125, 135, 161, 174, 175 |
| Hazina Ljungman | 25 |
| Asher D. Miller | 6, 11-13, 17, 26, 30, 75, 78, 99-101, 110, 112, 131-33, 175 |
| Derek Norton | 27, 162-75, 177-80, 182, 186 |
| Michael O'Connor | 28, 175, 177-80, 182, 186 |
| Christine Peters | 29, 148 |
| David Antony Rubin | 6, 11-13, 17, 26, 30, 75, 78, 99-101, 110, 112, |

-2-

5080423

| Defendant | Alleged Misconduct ¶ |
|---|---|
| | 131-33, 175 |
| Michael Jay Solomon | 32, 149-75, 177-80, 182, 186 |
| Leathem Steran | 33, 126, 135, 145, 171, 174-7, 177-80, 182, 1865 |
| Bernard Stolar | 34, 136-39, 158, 162, 166-67, 171, 174-75, 177-80, 182, 186 |
| Eric Stoppenhagen | 35, 136, 175, 177-80, 182, 186 |
| Tiger Telematics, Inc. | 48-64, 66-67, 71-72, 76 |
| Chuck Timpe | 37, 175, 177-80, 182, 186 |
| Media Power USA LLC | 90-122 |
| Asiatic Commerce Bank | 55 |

The basis for liability is 18 U.S.C. § 1962(c), (d).

**3.    List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

Wrongdoers other than the named defendants and their alleged misconduct include the following:

> Indie Studios AB (Ex. A ¶ 50-51)
> Golden Sands Investment Holdings (Ex. A ¶ 51)
> Peter Uf (Ex. A ¶ 51-52, 70)
> Northern Lights Software Limited (Ex. A ¶ 55)
> Alien King Inc. (Ex. A ¶ 94)
> Stein Bagger (Ex. A ¶ 104-06)
> IT Factory (Ex. A ¶ 102-12)
> Carlito Software Limited (Ex. A ¶ 106)
> MARA Group Limited (Ex. A ¶ 121, 139-44)
> Spongetech Delivery Systems, Inc. (Ex. A ¶ 155-58)
> IKDATA DE, Inc. (Ex. A ¶ 170)
> William Schloth (Ex. A ¶¶ 130, 137, 174-75)
> Hutton International Investments, Ltd. (Ex. A ¶ 177)
> Summit Trading Limited (Ex. A ¶ 178)
> Ebeling Hefferman, Inc. (Ex. A ¶¶ 179-80)

**4.    List the alleged victims and state how each victim was allegedly injured.**

Plaintiffs are not aware of all persons who have been injured in their business and property and thus are victims of the RICO scheme, absent discovery.  However, they include the following:

5080423

•      Gizmondo Enterprise

The victims of the Gizmondo Enterprise and the Gizmondo Defendants include their creditors, including without limitation, Davies and Warnock.  Plaintiffs were fraudulently induced to loan approximately $26,000,000 to Gizmondo.  Further, the defendants' fraudulent statements and conduct has enabled them to evade paying their debt, plus interest, to the Plaintiffs.

•      GetFugu Enterprise

The victims of the GetFugu Enterprise and the GetFugu Defendants include GetFugu, and the company's shareholders, including Warnock, who owns 500,004 shares of the company and has owned such shares during all relevant time periods.  The racketeering activities, including depriving GetFugu's shareholders of the value of honest services, have directly injured the value of the value of GetFugu to the detriment of its shareholders.  The GetFugu Defendants caused GetFugu to overpay for the Eight Patent Applications to the undue benefit of Freer and his associates.

**5.    Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim.  A description of the pattern of racketeering shall include the following information:**

    **a.    List the alleged predicate acts and the specific statutes which were allegedly violated;**

In carrying out their scheme and conspiracy, the defendants have engaged in mail and wire fraud (18 U.S.C. §§ 1341, 1343), mail and wire fraud involving a scheme or artifice to deprive another of the intangible right of honest services (18 U.S.C. §§ 1346), and money laundering (18 U.S.C. § 1956).  These predicate acts constitute a pattern of racketeering activity through which the defendants have violated 18 U.S.C. § 1962(c) and (d).  *See* Ex. A hereto.

    **b./c.    Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts; if the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of the securities, the "circumstances constituting**

**fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;**

The alleged predicate acts occur on a regular and ongoing basis, included but not limited to the following act described with particularly in the corresponding paragraphs of Ex. A:

- Gizmondo Enterprise

  Mail and wire fraud, including acts involving a scheme or artifice to deprive another of the intangible right of honest services – Ex. A paragraphs 49, 55, 57, 60-62, 95, 99, 100-01, 115, 119-21.

  Money laundering – paragraph 106.

- GetFugu Enterprise

  Mail and wire fraud, including acts involving a scheme or artifice to deprive another of the intangible right of honest services – Ex. A paragraphs 127-33, 137, 140, 143-47, 158, 160, 170, 177-80, 182, 185-86.

More specific details regarding dates, times, places, and identities of other parties participating in many of the predicate acts will be provided after further investigation and discovery.

**d.     State whether there has been a criminal conviction for violation of the predicate acts;**

Bagger pled guilty in Denmark to fraud related to IT Factory and on or about June 11, 2009, Bagger was sentenced to seven years in a Danish prison. Ljungman is in prison in Denmark and currently on trial facing fraud charges also related to the IT Factory case.

**e.     State whether civil litigation has resulted in a judgment in regard to the predicate acts;**

To the best of Plaintiffs' knowledge, there has not been any civil judgment regarding the predicate acts.

-5-

5080423

**f.    Describe how the predicate acts form a "pattern of racketeering activity";**

A "pattern of racketeering activity" requires at least two acts of racketeering activity within the last ten years.  Defendants' predicate acts form a pattern of racketeering activity consisting of multiple related acts since at least 2002 and are ongoing.  Each and every predicate act of mail and wire fraud was related in that the purpose of each was to unlawfully deprive Plaintiffs and other victims of their money and property by means of fraudulent statements and acts, and was further intended to prevent detection of the unlawful activities.  In addition, in connection with the Gizmondo Enterprise, defendants Media, Freer, Irwin, Ljungman, and Dragon Phoenix, as well as non-party wrongdoers, IT Factory, Bagger, Carlito Software Limited, and others engaged in at least two acts of money laundering since at least August 2007.

**g.    State whether the alleged predicate acts relate to each other as part of a common plan.  If so, describe in detail.**

The above described predicate acts amounted to common plan.  The defendants' acts of racketeering had the same pattern and a similar purpose of defrauding Plaintiffs.  Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs.  Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to Plaintiffs' business and property.

**6.**    **Describe in detail the alleged enterprise for each RICO claim.  A description of the enterprise shall include the following information:**

    **a.**    **State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;**

    •    <u>Gizmondo Enterprise</u>

The Gizmondo Enterprise consists of an association in fact between and among Tiger, Gizmondo, Freer, Eriksson, Media Power, GetFugu (formerly Madero), Ljungman, Solomon, Steran, Stolar, Irwin and Kozhuharov.

    •    <u>GetFugu Enterprise</u>

The GetFugu Enterprise consists of GetFugu.

    **b.**    **Describe the structure, purpose, function and course of conduct of the enterprise;**

    •    <u>Gizmondo Enterprise</u>

Tiger, Gizmondo, Media Power, MARA, and GetFugu (formerly Madero) are separate corporations.   Freer, Eriksson, Ljungman, Solomon, Steran, Stolar, Irwin and Kozhuharov have been or are shareholders, employees, officers or directors of those corporations.  Freer, Eriksson, Ljungman, Solomon, Steran, Stolar, Irwin and Kozhuharov control and manage the corporate members of the Gizmondo Enterprise.  The Gizmondo Enterprise operates to, *inter alia*, swindle persons out of funds who loan money to or invest in the corporations and the Enterprise.  Freer is a felon and corrupt individual who has repeatedly schemed and conspired with others to take over companies, many of them publicly traded, and then exploit them for his own greedy and improper purposes.  Freer and those of his corrupt associates often benefit from classic "pump and dump" schemes to talk up the value of penny stocks, sell their shares at the inflated prices, and then abandon the companies and its exploited shareholders, before moving on to their next business. Further, Freer and his associates have used their management and control positions with these corporations to strip corporate assets and to raid the corporate piggybank for their

-7-

1  personal benefit, deprive the shareholders of their honest services, commit fraud, breach

2  their fiduciary duties and stiff creditors (including Plaintiffs) – all in an effort to improperly

3  and unlawfully enrich themselves and for their own financial benefit.

4       •       GetFugu Enterprise

5       The GetFugu Enterprise allegedly developed "Augmented Reality" technology for

6  mobile telephones.  However, the Enterprise is operated by the GetFugu Defendants to,

7  *inter alia*, swindle persons out of funds who loan money to or invest in GetFugu.  *See also*

8  Response to No. 6(b).  GetFugu has a Board of Directors (the members of which

9  included Bailey, Irwin, Jenkins, Kurz, LaPresle, Miller, O'Connor, Peters, Solomon,

10  Steran, Stolar, Stoppenhagen, and Timpe).  However, GetFugu is owned and

11  controlled by Freer.

12
13  **c./d.   State whether any defendants are employees, officers or directors of the
             alleged enterprise; state whether any defendants are associated with the
14           alleged enterprise;**

15  The following defendants are employees, officers or directors of the Enterprises or

16  are associated with the Enterprises:

17
18

| Corporation | Defendants = Employees, Officers or Directors | Defendants = Associated With |
|---|---|---|
| GetFugu (formerly Madero) | Freer, Bailey, Champion, Irwin, Kozhuharov, Kurz, LaPresle, Ljungman, Norton, O'Connor, Peters, Solomon, Steran, Stolar, Stoppenhagen, Timpe | Begbies Traynor Group (including Davis, Dolder, Hudson), Corporate Valuation Advisors, David Rubin & Partners (including Miller, Rubin), Anneli Freer, Ericka Freer, Asiatic |
| Tiger Telematics, Inc. | Freer, Carrender, Eriksson | Anneli Freer, Asiatic |
| Gizmondo | Carl Freer, Eriksson | Begbies Traynor Group, David Rubin & Partners, Anneli Freer, Asiatic |
| Media Power USA LLC | Freer, Jenkins, Kozhuharov, Ljungman | Dragon Phoenix (China) Ltd., Juanita Group Ltd., Asiatic |
| MARA Group | Freer | |

19
20
21
22
23
24
25
26
27
28

-8-

5080423

**e.**   **State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are enterprise itself, or members of the enterprise; and**

While some defendants participate in and are members of the Enterprises, they also have an existence separate and distinct from the Enterprises.

**f.**   **If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

•   Gizmondo Enterprise

The Gizmondo Enterprise consists of an association in fact between Tiger, Gizmondo, Freer, Eriksson, GetFugu (formerly Madero), Ljungman, Solomon, Steran, Stolar, Kozhuharov, Irwin, and Media Power.

Defendants are perpetrators of the racketeering activity.

•   GetFugu Enterprise

GetFugu is a perpetrator of racketeering activity, based on the activities of its officers, directors, agents, employees, attorneys, and controlling shareholders.  GetFugu and its shareholders are victims of the racketeering activity.

**7.**   **State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

The pattern of racketeering activity and the Gizmondo and GetFugu Enterprises are separate.  The members of each Enterprise share a common purpose and plan.  Each Enterprise has a structure for decision-making and for oversight, coordination, and the predicate acts.  The patterns of racketeering activity include mail and wire fraud, a scheme to deprive the rights of others to honest services, and money laundering.

5080423

**8.      Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The Enterprises oversee, coordinate and facilitate the commission of predicate offenses.   The activities of the corporate members of the Enterprises may have some legitimate activities.  However, the racketeering activity is composed of mail and wire fraud and money laundering.

**9.      Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

The Gizmondo and GetFugu Enterprises benefit from the pattern of racketeering activity through funds made available by lenders and investors and concealment of the predicate acts.   They also benefit from using assets, money and property for improper purposes.

**10.     Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The activities of the both Gizmondo and GetFugu Enterprises affect interstate and foreign commerce.  The alleged products of the corporate members of the Enterprise have been and are being offered in interstate and foreign commerce.  In addition, they have sought and obtained loans from citizens of foreign states and the United States, including without limitation, the Plaintiffs.  Further, the Enterprise and its members have sought and obtained equity investments and funding from foreign and U.S. citizens, including, for example, SpongeTech Delivery Systems, Inc., Hutton International Investments, Ltd., and Summit Trading Limited.   Warnock, a U.K. citizen, owns, 500,004 shares of GetFugu stock.  GetFugu stock is publicly traded, and they have filed documents with the Securities and Exchange Commission.

The Enterprise has regularly disseminated by wire and the mail to the U.S. and foreign press and public false and misleading news releases, statements, and letters.  The instant RICO claim is based on predicate acts of federal statutory violations, meaning that

-10-

the nexus with interstate commerce is necessarily established by the commission of such federal offenses.   The U.S. Constitution confers the postal powers on the federal government such that acts of mail fraud have a nexus with interstate commerce.

Members of the Enterprise have entered into contracts with United States and foreign entities, including without limitation, the Plaintiffs, the Joint Liquidators, U.K. persons, CVA, a Wisconsin company, and PIF, involving matters affecting interstate and foreign commerce.

In addition, Media Power, through its eCommerce subsidiary, was engaged in unlawful money laundering activities between and among IT Factory, a Danish corporation, Bagger, a Danish citizen, and Dragon, a Chinese company.

Accordingly, the activities of the Enterprise, including its specific members affect interstate and foreign commerce.

**11.    If the complaint alleges a violation of 18 U.S.C. Section 1962(a), provide the following information:**

**a./b.    State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and describe the use or investment of such income.**

Not applicable.

**12.    If the complaint alleges a violation of 18 U.S.C. Section 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

Not applicable.

**13.    If the complaint alleges a violation of 18 U.S.C. Section 1962(c), provide the following information:**

**a.    State who is employed by or associated with the enterprise; and**

*See* Response to No. 6(c), (d).

SECOND AMENDED RICO CASE STATEMENT

5080423

**b.    State whether the same entity is both the liable "person" and the "enterprise" under Section 1962(c).**

•    Gizmondo Enterprise

The members of the Gizmondo enterprise are also liable persons.

•    GetFugu Enterprise

In connection with the GetFugu Enterprise, GetFugu is not a liable person at this time.

**14.   If the complaint alleges a violation of 18 U.S.C. Section 1962(d), describe in detail the alleged conspiracy.**

•    Gizmondo Enterprise

Anyone who agrees or conspires to pursue the same criminal objective can be held liable for a RICO violation. "If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." *Salinas v. United States*, 522 U.S. 22, 64 (1997).  A conspirator must simply intend to further an endeavor which, if completed, would satisfy all elements of a civil RICO claim.  The Gizmondo Conspiracy Defendants conspired to facilitate the scheme operated by and through the members of the Enterprises and to further their common purpose of improperly using corporate assets for their own personal use and benefit and to prevent detection of their scheme.   The Gizmondo Defendants further conspired to fraudulently obtain investment funds and loans from others, without any present intention to repay loans or honor their contractual agreement.  The Gizmondo Defendants further operated the Gizmondo Enterprise to conceal funds and assets that should have been used to repay Plaintiffs.

The purpose and effect of the conspiracy was to conspire to violate § 1962(c).  The co-conspirators have engaged in numerous predicate and fraudulent acts of racketeering in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Plaintiffs of money and property.

-12-

The nature of the above described co-conspirators' acts, misrepresentations and omissions give rise to an inference that they not only agreed to a violation of § 1962(d) by conspiring to violate § 1962(c), but also that they were aware that their ongoing acts and statements have been and are part of an overall pattern of racketeering activity. Each Gizmondo Conspiracy Defendant was aware of the general nature of the conspiracy and its role in facilitating the objectives of the conspiracy.  Further, each agreed to or ratified the overall objective of the conspiracy.  These defendants have engaged in overt acts in support of the conspiracy, including the predicate acts alleged above.

• GetFugu Enterprise

The multiple GetFugu Conspiracy Defendants have conspired to conduct or participate in the affairs of the GetFugu Enterprise through a pattern of racketeering activity.

The GetFugu Conspiracy Defendants have engaged in numerous predicate and fraudulent acts of racketeering in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud the shareholders of GetFugu of money and property and to deprive them of the right of honest services.

The nature of the GetFugu Conspiracy Defendants' acts, misrepresentations and omissions give rise to an inference that they agreed to a violation of § 1962(d) by conspiring to violate § 1962(c).  Further, they were aware that their ongoing acts and statements have been and are part on an overall pattern of racketeering activity.

Each GetFugu Conspiracy Defendant was aware of the general nature of the conspiracy and its role in facilitating the objectives of the conspiracy.  Further, each agreed to or ratified the overall objective of the conspiracy.

The co-conspirators have engaged in overt acts in support of the conspiracy, including the predicate acts alleged above.

As a direct and proximate result of the foregoing, Plaintiffs have been injured in their business or property.

-13-

**15.    Describe the alleged injury to business or property.**

Plaintiffs and GetFugu shareholders have been injured in their business or property by the defendants, in an amount to be proven at trial in excess of $35,000,000 plus pre- and postjudgment interest.

**16.    Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

The damages here are directly caused "by reason of" the RICO racketeering activity. Defendants could foresee the injuries resulting from their conduct, there are no independent intervening causes, and the facts show the causal connection.

In connection with the Gizmondo Enterprise, the Defendants' fraudulent statements induced and caused the Plaintiffs to loan more than $21,000,000 to Gizmondo, none of which has been repaid.

The injury to Warnock, individually and on behalf of the GetFugu shareholders, was proximately caused by the activities of the GetFugu Defendants.  The mail and wire fraud acted to deprive GetFugu's shareholders of the right to honest services from the company's officers and directors.  The GetFugu RICO Defendants used their wire and mail fraud activity to improperly dissipate GetFugu's assets and valuation.

The fraudulent acts by the GetFugu RICO and GetFugu Conspiracy Defendants have been so injurious to the company that it was forced to disclose that it may not be able "to continue as a going concern":

> The Company needs to raise additional capital from external sources in order to sustain its operations while continuing the longer term efforts contemplated under its business plan. The Company expects to continue incurring losses for the foreseeable future and must raise additional capital to pursue its product development initiatives, to penetrate markets for the sale of its products and to continue as a going concern. The Company cannot provide any assurance that it will raise additional capital. If the Company is unable to secure additional capital, it may be required to curtail its research and development initiatives and take additional measures to reduce

-14-

costs in order to conserve its cash in amounts sufficient to sustain operations and meet it obligations. These measures could cause significant delays in the Company's efforts to commercialize its products, which is critical to the realization of its business plan and the future operations of the Company. These matters raise substantial doubt about the Company's ability to continue as a going concern.

SEC Form 10-Q (filed November 23, 2009; signed by Stolar). The GetFugu RICO and Conspiracy Defendants proximately caused the loss of value of their shares in the company.

The injury to GetFugu and its shareholders was also proximately caused by CVA's fraudulent patent applications valuation and the conspiracy to do so. There, GetFugu RICO and Conspiracy Defendants used the pretext of that valuation to justify providing a grossly excessive stock windfall in GetFugu to Freer and his associates, unfairly diluting the value of shares held by existing shareholders, and to deceive the investing public into overvaluing GetFugu. On or about April 6, 2009, CVA issued its second valuation report that valued the Eight Patent Applications allegedly sold to GetFugu at $35-52 million.

The injury to GetFugu and its shareholders was further proximately caused by the Joint Liquidators. They made false statements of material facts to enrich themselves to the detriment of the creditors of Gizmondo, including Plaintiffs. On or about April 22, 2009, the stock price of GetFugu was $3.20 per share.

**17.     List the damages sustained for which each defendant is allegedly liable.**

    •     <u>Gizmondo Enterprise</u>

        Plaintiffs have sustained damages including but not limited to the unpaid loan amount plus interest in the amount of approximately $35,000,000.

    •     <u>GetFugu Enterprise</u>

        Plaintiffs have sustained damages including but not limited to the value of GetFugu's stock before any racketeering activity occurred and the present value of the stock, including the value the stock would have had had the GetFugu Defendants not

-15-

engaged in fraud and deprived the shareholders of honest services.  Damages also include money, property and assets that were improperly obtained by the GetFugu Defendants.

**18.     List all other federal causes of action, if any, and provide the relevant statute numbers.**

Not applicable at this time.

**19.     List all pendent state claims, if any.**

Plaintiff has asserted the following pendent state claims: (a) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* against all defendants; (b) a derivative claim for breach of fiduciary duties involving GetFugu against defendants Freer, Bailey, Champion, Irwin, Kozhuharov, Kurz, LaPresle, Norton, O'Connor, Peters, Solomon, Steran, Stolar, Stoppenhagen, and Timpe; (c) a derivative claim for fraud against CVA; (d) a derivative claim for negligence and gross negligence against CVA; (e) breach of contract against defendants Freer and Eriksson; (f) account stated against Freer and Eriksson; (g) unjust enrichment against Freer and Eriksson; (h) civil conspiracy against all defendants; (i) fraud against Freer and Eriksson; (j) Fraudulent Transfer Act and common law fraudulent transfer against Freer, Ericka Freer, an unknown limited liability corporation, and other unknown persons; (k) aiding and abetting breach of fiduciary duties against CVA; and (l) aiding and abetting breach of fiduciary duties by the Joint Liquidators.

**20.     Provide any additional information that you feel would be helpful to the court in processing your RICO claim.**

Plaintiffs incorporate herein by reference the allegations in their First Amended Complaint and the documents referred to therein and Ex. A hereto.

The allegations contained herein are based upon Plaintiffs' good faith investigation. Their investigation is ongoing.  Given the nature of the alleged unlawful conduct, much information is currently concealed from the public and plaintiffs and will only become

-16-

5080423

1  available through discovery.  Plaintiffs reserve their right to amend and supplement this

2  Statement, if necessary, as additional information becomes available to it through discovery

3  or otherwise.

4  DATED:  March 10, 2010          RICHARD J. OPARIL

5                                                  **PATTON BOGGS LLP**

6                                                  /s/ Richard J. Oparil

7                                                  Richard J. Oparil
                                                   Attorneys for Plaintiffs
8                                                  SIMON DAVIES AND DAVID WARNOCK

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-

5080423