

D. Michelle Douglas (CA Bar No. 190248)
KALBIAN HAGERTY L.L.P.
The Brawner Building
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone:       (202) 223-5600
Facsimile: (202) 223-6625
E-mail:     hkalbian@kalbianhagerty.com
            mdouglas@kalbianhagerty.com

Louis R. Miller, Esq. (CA Bar No. 54141)
Alexander Frid, Esq. (CA Bar No. 216800)
Miller Barondess, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Phone:       (310) 552-4400
Facsimile:   (310) 552-8400
E-mail:           smiller@millerbarondess.com
            sfrid@millerbarondess.com

*Counsel for Proposed Plaintiff-Intervenor Palestine Investment Fund*

**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

GHK (FMOx)

| | |
|---|---|
| SIMON DAVIES an individual; and DAVID WARNOCK an individual,<br><br>                    Plaintiffs,<br><br>v.<br><br>GETFUGU, INC., a Nevada corporation;<br>CARL FREER, an individual;<br>ALAN J. BAILEY, an individual;<br>BEGBIES TRAYNOR GROUP, a United Kingdom corporation;<br>MICHAEL CARRENDER, an individual; MARK CHAMPION, an individual; CORPORATE VALUATION ADVISORS, INC., | CASE NO. CV 09-8724 ~~RGK~~ ~~(RCx)~~<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**<br><br>Date:       May 17, 2010<br>Time:       9:30 a.m.<br>Location:  Courtroom 650<br>             (Hon. George H. King) |

ORIGINAL

a Wisconsin corporation; DRAGON PHOENIX CHINA LTD., a Chinese corporation; DAVID RUBIN & PARTNERS, a United Kingdom corporation; PAUL DAVIS, an individual; TIMOTHY DOLDER, an individual; STEFAN ERIKSSON, an individual; ANNELI FREER, an individual; ERICKA FREER, an individual; DAVID HUDSON, an individual; JASON IRWIN, an individual; JUANITA GROUP LTD., a United Kingdom corporation; IVAN D. KOZHUHAROV, an individual; DONALD A. KURZ, an individual; MARK LAPRESLE, an individual; MIKAEL LJUNGMAN, an individual; HAZINA LJUNGMAN, an individual; ASHER D. MILLER, an individual; DEREK NORTON, an individual; MICHAEL O'CONNOR, an individual; CHRISTINE PETERS, an individual; DAVID ANTONY RUBIN, an individual;  MICHAEL JAY SOLOMON, an individual; LEATHEM STERAN, an individual; BERNARD STOLAR, an individual; ERIC STOPPENHAGEN, an individual; TIGER TELEMATICS, INC., a Florida corporation; MEDIA POWER USA LLC, a California corporation; RICHARD JENKINS, an individual; DOE 1 through 10 inclusive.

Defendants.

## Preliminary Statement

The Palestine Investment Fund respectfully submits this Memorandum of Law in Support of its Motion to Intervene as a Party Plaintiff in the above-captioned action pursuant to Rule 24 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

On April 12, 2005, the Palestine Investment Fund ("PIF") purchased 1,220,588 shares of Tiger Telematics, Inc. ("Tiger") common stock from Juanita Group Ltd. ("Juanita") (hereinafter, the "Stock Purchase"). Tiger's Chairman of the Board at the time of the solicitation of PIF's investment and 2005 was Stock Purchase was Defendant Carl Freer.

Tiger first approached PIF in February, 2005, via by an individual named Saad Raja ("Raja"). Upon information and belief, at all times material to the allegations in the proposed complaint, Raja was fully authorized agent of Carl Freer and Tiger. In order to induce PIF to invest in the Tiger stock, Raja made numerous, material factual representations to Mr. Husam Kailani, an investment advisor and employee of PIF, that turned out to be false (and were false at the time Raja made them to PIF on behalf of Tiger and Freer (and perhaps other unknown defendants).

For example, in March 2005, Raja represented that Deutche Bank was going to act as exclusive agent to Tiger in connection with a private placement of Tiger common stock which would raise $75 to $100 million dollars for Tiger. To bolster this illusion, Raja obtained an unsigned engagement Agreement between Deutche Bank and Tiger from Tiger and/or Defendant Freer. He sent this engagement agreement to PIF in support of the false statement that Deutche Bank had done "extensive due diligence on Tiger" and was going to represent Tiger and raise money for the Company. However, Deutche Bank never became the placement agent for Tiger. Moreover, in view of the financial condition, it would seem that such an institution would not have accepted Tiger as a client.

On information and belief, Raja communicated the following representations, inter alia, from defendant Freer to PIF through its employee, Mr. Kailani:

a)    Tiger had $45 million "in the bank" as of the date of the PIF Investment.

b)    The Company had a $60 million credit line with the Asiatic Commerce Bank which was currently unused.

c)    The Company had just signed a factoring agreement for up to $20,000,000 with Bank of America and GE Capital.

d)    The Company was finalizing a $50 million working capital facility with the Royal Bank of Scotland.

None of these material statements was true. Moreover, at all times material hereto, Defendants Tiger and Freer (and others) knew that the misrepresentations being made to PIF were wholly false at the time they made them in March 2005. However, they were intent on saying whatever it would take to induce the stock purchase by PIF. In October of 2005, Tiger filed a report on SEC Form 10Q, showing that for the first quarter of 2005 (when PIF was making its investment) that Tiger lost $163.8 million, had total current assets of only $9,500,000 and had spent just $455,092 on goods sold. Furthermore, the Asiatec Commerce bank was owned and controlled by Defendant Freer and never had anything approaching the assets to extend a $60 million line of credit to Tiger. Defendant Freer knew that the representations made to PIF with regard to the financial status of Tiger at the time of the PIF investment were false and PIF relied on these statements in making its decision to invest in Tiger stock

It also turns out that Freer diverted the proceeds of the PIF $20M investment. More specifically, on April 11, 2005, Defendant Michael Carrender (as Tiger's CEO), wrote four letters to PIF transmitting Tiger shares to PIF (one for 200,000 shares, one for 20,588 shares, one for 600,000 shares, and one for 400,000 shares) and stated that the shares were being purchased from a "non – affiliated shareholder". In fact, however, the shares came from Defendant Juanita Group Ltd., which was owned and controlled by Defendant Freer (and then his wife, Defendant Anneli Freer) who was Chairman of the Board of Tiger at that time. These letters were false and misleading and relied upon by PIF in making its investment in Tiger shares. PIF was also unaware that of the $20,750,000 transferred to

Juanita for the purchased Tiger shares, Tiger only received $14,119,880. On information and belief, Defendant Freer and his then wife, Defendant Anneli Freer converted the differences to their own use. PIF expected its entire investment to be used to advance the business of Tiger and would not have invested if it had known that Defendants Anneli and Carl Freer were going to skim almost a third of the investment for themselves. Freer, Tiger and/or defendants hid the diversion of the proceeds from PIF.

What followed the initial fraud was an elaborate and lengthy campaign by Defendants Tiger, Freer, Jenkins and at least early on, Carrender, to forestall any efforts by PIF to either mitigate its losses and subsequently to forestall any enforcement efforts or litigation by PIF. For example, at a time when Tiger's stock was still worth $8.00 a share, on October 26, 2005, Defendants Freer and Carrender—together with Raja—had a conference call with Kailani on behalf of PIF.

In that call, Freer stated that his recent resignation from Tiger was not caused by any adverse news or internal turmoil, but was a strategy more related to positive events that would be announced shortly; that Tiger would be current with all its SEC filings within 10 business days; that Tiger's shares would be listed on NASDAQ within 4-8 weeks and that Tiger was currently in negotiations for the sale of all of its assets for $30 per share. In reliance of their representations, all of which defendants Tiger, Freer and Carrender knew to be false when made, Kailani recommended that PIF not sell its portion in Tiger's stock. Five months later, Tiger's shares were trading at 16 cents per share and its wholly owned subsidiary Gizmundo was in bankruptcy.

Subsequently, Tiger, Freer and Jenkins on several different occasions, tacitly acknowledged the losses they had inflicted upon PIF and promised to give them stock in new in viable ventures. As recently as April 27, 2009, PIF's counsel met with Mr. Richard Jenkins, who was the partner of the former Tiger Telematics executive Mr. Freer, in New York. Similar to events a few months earlier in the fall of 2008, Freer agreed to meet in New York, then refused, avoided the calls and emails of PIF's counsel, and responded only with a message regarding a new business opportunity.

Memorandum in Support of Motion to Intervene

Suffice it to say, that Defendants Freer and Jenkins never fulfilled any of their promises to grant stock to PIF in any of the purported new ventures and to make up for PIF's losses in the Tiger investment. PIF recently (within the past few months) learned of the suit by Plaintiffs and the fraud perpetrated upon them.

## ARGUMENT

I.    **THIS COURT SHOULD GRANT PROPOSED INTERVENOR'S INTERVENTION AS A MATTER OF RIGHT.**

Under Federal Rule of Civil Procedure 24, a private party may intervene in an action in federal court. Parties may intervene "as a right" under 24(a) or by "permissive" or "conditional" intervention under 24(b). Pursuant to the established standard in the Ninth Circuit, an applicant seeking intervention as of right under Fed.R.Civ.P. 24(a)(2) must show that: (1) it has a "significant protectable interest" relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir.1998).

In determining whether intervention is appropriate, courts "are guided primarily by practical and equitable considerations." *Donnelly*, 159 F.3d at 409. The Ninth Circuit "construe[s] Rule 24(a) liberally in favor of potential intervenors." *Cal. ex rel. Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006) (citing *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir.2001)); *see also U.S. ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir.1992) ("Generally, Rule 24(a)(2) is construed broadly in favor of proposed intervenors and we are guided primarily by practical considerations") (internal quotation marks and citation omitted). Rule 24 specifically provides that "anyone *shall* be permitted to intervene in an action" when the required elements are satisfied. Fed. R. Civ. P. 24(a) (emphasis added). A court "must grant the motion to intervene if [the] four criteria are met[.]" *U.S. v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996). The above referenced criteria are met in this case.

### A.   PIF has a significant protectable interest relating to the property or transaction that is the subject of the action.

Paragraph 64(d) of the current Complaint in the California lawsuit lists, as one of the improper acts of the Defendants, the sale of Tiger stock to the Palestinian Investment Fund and the price paid for the stock by the PIF.  The Plaintiffs' Complaint in this action demonstrates that Proposed Intervenor-Plaintiff PIF has a significant protectable interest relating to the $20,750,000 worth of Funds wrongfully obtained by Tiger and Freer, thereby satisfying the first criteria referenced above.  "[A] non-speculative, economic interest" related to the underlying subject matter of the action "may be sufficient to support a right of intervention."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  As set forth in the accompanying Complaint in Intervention, Defendants misrepresented the material facts of the transaction to induce PIF to pay for Tiger stock based on the misrepresentations of Freer and his associates.  PIF's loss, the direct result of the misrepresentations to bring about the sale of Tiger stock, manifests a significant protected interest in the return of the assets Freer and company fraudulently took from PIF.

### B.   The disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest.

The Complaint makes various factual statements regarding PIF and its dealings with some of the Defendants.  However, because their interests may differ in some respects, they may not pursue the allegations with the same vigor as PIF. Moreover, if the present Plaintiffs recover from the Defendants in the amounts being demanded, the Defendants would most probably be unable to satisfy any subsequent judgment obtained by PIF. Without intervention, PIF would be left with no reasonable or practical chance to rectify its injury through a separate cause if the Plaintiffs in this action are successful.  Indeed, a disposition in this matter, given the scale and damages sought, would have a preclusive effect on PIF's independent action to remedy its injury rendering the defendants, in effect,

---

Memorandum in Support of Motion to Intervene

judgment proof. Therefore, the disposition of this case would impair or impede PIF's ability to "protect its interest."

### C. The application is timely.

In determining whether a motion for intervention is timely, a court considers three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir.1986). The Court must construe the requirements of FRCP 24, including timeliness, broadly in favor of the party seeking intervention. *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983). Concerning prejudice, the question is not whether the intervention itself will cause the nature, duration or disposition of the lawsuit to change. *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999). Rather the consideration of prejudice related to loss of evidence, settlements made in expectation that no further claims would be made, or the necessity of reopening matters previously adjudicated. *Petrol Stops Northwest v. Continental Oil Co.*, 647 F.2d 1005, 1010 (9th Cir. 1981).

The original complaint was filed less than 5 months ago and the case is still in its early stages. It is in fact not fully at issue as the current Plaintiffs are still in the process of locating and serving all the Defendants, and only in the past few weeks have Defendants started to file motions to dismiss and Plaintiffs have recently sought a default against one defendant. Intervention would not disrupt the process, diminish evidence, or contravene settlement expectations. The timing of this intervention is reasonable and practical under the current disposition here. Intervention is therefore timely.

### D. The existing parties may not adequately represent the applicant's interest.

PIF's interest is distinct from and would not be adequately protected by the parties to this action. The present plaintiffs in the California Lawsuit are holders of promissory notes and are not shareholders of Tiger like our clients. The rights of holders of notes are different than the rights of shareholders so the present plaintiffs may not adequately

represent our client's interest in the California Lawsuit.  While the Complaint mentions integral underlying facts, the do not mention an interest of PIF and the present Plaintiffs are not seeking to represent, protect, or procure and interest of PIF or address the fraud which is the primary injury to PIF.  This satisfies the fourth criteria referenced above.

## II. IF THIS COURT DOES NOT GRANT INTERVENTION AS A RIGHT, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

While PIF is entitled to intervene as a right, should the Court determine otherwise, PIF alternatively and respectfully requests leave of the Court for permissive intervention.  Fed R. Civ. P. 24(b)(2) governs permissive intervention:

> Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. Donnelly, 159 F.3d at 411-12.  "Permissive intervention to litigate a claim on the merits under Rule 24(b) requires. . . an independent ground for jurisdiction." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir.1992).

### A. Proposed Intervenor's Claim and the Main Cause of Action have Common Questions of Law and Fact.

PIF claims are factually intertwined with the facts asserted by Plaintiffs.  PIF's application derives directly from the same facts as alleged by Plaintiffs in this action. Plaintiffs' Complaint alleges a conspiracy among defendants and repeated fraudulent transgressions by defendants which are claims and facts that are indistinguishable from Proposed Intervenor's claims. Plaintiffs' Complaint specifically addresses the facts of the

fraud committed on PIF in the sale of Tiger Stock.  The same patterns of fraudulent behavior, same companies used for such acts, and same individuals responsible for these interrelated acts are present.  Moreover, as set fourth in PIF's Complaint in Intervention filed herewith, PIF believes there is a RICO claim and PIF plans to address this claim in further detail.  Clearly, the Proposed Intervenor's claims and the main action involve common questions of fact and raise related questions of law based on shared underlying facts.

### B.   Permissive Intervention Will Not Result in Either Undue Delay Or Prejudice to the Rights of the Original Parities.

As well, as noted above, PIF's motion is timely under the circumstances and current disposition of the litigation still at an early stage where Defendants are just being served and Defendants are only now raising preliminary motions.  Intervention will not unduly delay the main action or unfairly prejudice the existing parties.  *Donnelly*, 159 F.3d at 411-12.

### C.   The Court has Independent Jurisdiction to Hear Proposed Intervenor's Causes of Action.

The Court here has independent jurisdiction as well.  As Plaintiffs' Complaint notes, this Court has personal jurisdiction over the Defendants in this case, for example Freer is a resident of California and Juniata Group's principal place of business is California.  There is complete diversity of citizenship and intervention by PIF will not affect this diversity since PIF is a Public Shareholding Company and independent legal entity headquartered in Ramallah, West Bank and existing under the laws applicable in the West Bank.  The amount in controversy exceeds $75,000.  PIF's claims against Tiger, Freer, and fellow Defendants are under Federal Securities anti-fraud laws including claims under section 10b of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5.  As well, as outlined in the Complaint in Intervention, PIF believes there is a RICO claim which also falls under federal question subject matter

jurisdiction of this Court.[1]  Therefore this Court has both independent personal jurisdiction and subject matter jurisdiction.

Dated:  April 15, 2010

KALBIAN HAGERTY, LLP

_D. Michelle Douglas for_

D. MICHELLE DOUGLAS (CA Bar No. 190248)
*Counsel for Proposed Intervenor*
*Palestine Investment Fund*

---

[1]    Plaintiff plans to amend its complaint regarding that count.

## CERTIFICATE OF SERVICE

I am employed in the District of Columbia; I am over the age of eighteen years and not a party to the above-entitled action; my business address is 888 17th Street, NW, Suite 1000, Washington, DC 20006.

**Motion to Intervene, Memorandum in Support, and Proposed Order.**

I hereby certify that on the date set forth below, that I served via U.S. Mail, postage prepaid, the documents identified above on the following:

John C Kirkland, Esq.
Vicky N. Pham
Luce Forward Hamilton & Scripps LLP
601 South Figueroa Street Suite 3900
Los Angeles, CA 90017
213-892-4907
Fax: 213-452-8035
Email: jkirkland@luce.com
Email: vpham@luce.com

Clark S Stone, Esq.
Haynes and Boone, LLP
2033 Gateway Place, Suite 400
San Jose, CA 95110
408-392-9250
Fax: 408-392-9262
Email: clark.stone@haynesboone.com

Frances O'Meara, Esq.
Hinshaw & Culbertson LLP
11601 Wilshire Boulevard Suite 800
Los Angeles, CA 90025
310-909-8013
Fax: 310-909-8001
Email: fomeara@hinshawlaw.com

Dated:  April 15, 2010        KALBIAN HAGERTY, LLP

_____        D. MICHELLE DOUGLAS (CA Bar No. 190248)
*Counsel for Proposed Intervenor*
*Palestine Investment Fund*