**LINK TO DOCS #** 40, 86, 102 & 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8724-GHK (RCx) | Date | July 12, 2010 |
|---|---|---|---|
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

| Presiding: The Honorable | GEORGE H. KING, U. S. DISTRICT JUDGE | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **(In Chambers)** Order re: Defendants' Motions to Dismiss

   Plaintiffs Simon Davies ("Davies") and David Warnock ("Warnock" and collectively, "Plaintiffs") have filed an action against various individual and corporate defendants, bringing, *inter alia*, claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*., and RICO conspiracy, *id*. § 1962(d).  (Dkt. No. 20).  The First Amended Complaint ("FAC") includes two direct claims for RICO and RICO conspiracy targeting the alleged Tiger Telematics, Inc./Gizmondo Europe, Ltd. ("Tiger/Gizmondo") enterprise, and two derivative claims for RICO and RICO conspiracy targeting the alleged GetFugu, Inc. ("GetFugu") enterprise, which Plaintiffs have called a "'pump and dump' scheme."  (*Id*. ¶¶ 1, 191-240).  This matter is before us on the following motions: (1) Defendant Corporate Valuation Advisors, Inc.'s ("CVA") Motion to Dismiss for Failure to State a Claim (Dkt. No. 40); (2) Defendants Begbies Traynor Group PLC, David Rubin & Partners LLP, Paul Davis, Timothy Dolder, David Hudson, Asher D. Miller, and David Antony Rubin's (collectively, "the English Defendants") Motion to Dismiss Plaintiffs' FAC for Lack of Personal Jurisdiction and for Failure to State a Claim (Dkt. No. 86); (3) Defendants GetFugu, Inc., Carl Freer ("Freer"), Alan J. Bailey, Anneli Freer, Ericka Freer, Jason Irwin, Richard Jenkins, Ivan D. Kozhuharov, Donald A. Kurz, Mark LaPresle, Derek Norton, Christine Peters, Michael J. Solomon, Leatham Stearn, Bernard Stolar, Eric Stoppenhagen, and Chuck Timpe's (collectively, "Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim  (Dkt. No. 102); and (4) Defendant Michael O'Connor's ("O'Connor") Motion to Dismiss Plaintiffs' FAC for Lack of Personal Jurisdiction (Dkt. No. 99) (collectively, "the Motions").[1]

   With respect to the direct RICO and RICO conspiracy claims against the Tiger/Gizmondo enterprise (Claims 1 and 2), Plaintiffs allege that they were fraudulently induced to make a series of loans to Gizmondo, a subsidiary of Defendant Tiger.  (FAC ¶¶ 73-77).  Warnock alone or Warnock and Davies together received promissory notes in connection with each loan.  (*Id*. ¶ 73).  When the maturity date for one of the loans was extended by six months, a "1,027,069 stock option" was added, presumably as consideration for the delayed repayment.  (*Id*. ¶ 73(f)).  Plaintiffs allege that "Tiger failed to disclose to Davies and Warnock before entering into the agreements that in the first quarter of 2005,

---

[1] O'Connor has joined in Defendants' motions.  (Dkt. No. 99).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8724-GHK (RCx) | Date | July 12, 2010 |
|---|---|---|---|
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

the quarter in which it launched Gizmondo in the United Kingdom, Tiger lost $163.8 million." (*Id*. ¶ 75). They further allege that: "Reflecting Freer's pattern and practice of looting companies, $151.1 million of that loss arose from general and administrative operating expenses. By contrast, the company spent just $455,092 on goods sold." (*Id*. ¶ 75). Accordingly, they assert that they were "fraudulently induced" to make the loans to Gizmondo. (*Id*. ¶ 77). Plaintiffs have allegedly never been repaid for these loans. (*Id*. ¶ 86).

With respect to the derivative RICO and RICO conspiracy claims against the GetFugu enterprise (Claims 3 and 4), the directors and officers of GetFugu, formerly known as Madero, Inc. (*id*. ¶ 148), along with various other individual and corporate defendants, including CVA, allegedly made numerous misrepresentations or material omissions of fact in their public disclosures and press releases upon which investors, such as Warnock, relied when purchasing GetFugu shares. (*Id*. ¶¶ 47 (stating Warnock owns 500,004 shares of GetFugu stock), 142-43, 151-90; RICO Case Statement ["RCS"] ¶¶ 177, 182). Buoyed by CVA's allegedly negligent and/or fraudulent report regarding eight patent applications of allegedly questionable value, the GetFugu enterprise's members allegedly falsely promoted the current and projected value of the company and its technological acquisitions to secure new investment. (FAC ¶¶ 151-61). As another example, GetFugu allegedly announced it had entered into a strategic relationship with Illusive Media ("IM"), a marketing and advertising firm, which IM quickly denied as false. (RCS ¶ 182). Plaintiffs allege that: "GetFugu's public announcement was false and misleading and another attempt to try to artificially manipulate the stock price of the company for the purpose of its unlawful 'pump and dump' scheme." (*Id*.). Plaintiffs also allege that GetFugu officers and directors deliberately misrepresented the financial health of the company and failed to disclose to its shareholders that the SEC is purportedly investigating GetFugu for federal securities law violations. (FAC ¶¶ 172, 181, 186-87; RCS ¶ 186). As alleged, these representations, non-disclosures press releases, and valuation reports induced investors to purchase GetFugu securities. (FAC ¶ 152).

In our review of the Parties' papers, it has come to our attention that counsel have not addressed the possible application of the exception to the RICO standing provision, which provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). This exception does not apply to "any person that is criminally convicted in connection with the fraud . . . ." *Id*. Section 107 of the Private Securities Litigation Reform Act ("PSLRA"), which was enacted in 1995, added this exception. Pub. L. No. 104-67, 109 Stat. 737 (1995). Crucially, "the amendment was intended not simply 'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent a plaintiff from 'plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-369, at 47 (1995)); *see also Swartz v. KPMG, LLC*, 401 F. Supp. 2d 1146, 1151 (W.D. Wash. 2004) ("The rule that a plaintiff cannot assert a RICO claim based on predicate acts that sound in securities fraud is applicable even if . . . the claim is plead [*sic*] as a matter of mail fraud or wire fraud.") (citation omitted); *Seippel v Jenkins & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 372 (S.D.N.Y. 2004) ("In amending RICO, Congress was clear in stating that the PSLRA was meant to eliminate the possibility that litigants

**LINK TO DOCS #** 40, 86, 102 & 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8724-GHK (RCx) | | Date | July 12, 2010 |
|---|---|---|---|---|
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | | |

might frame their securities claims under a mail or wire fraud claim.") (citations and quotation marks omitted).

Since its enactment, courts have sought to clarify the scope of the Section 1964(c) bar. In *Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000), *cert. denied*, 531 U.S. 828 (2000), the Ninth Circuit rejected a claim that the PSLRA bar did not apply where the plaintiff had no standing to bring an independent securities fraud claim on the same factual allegations. *Id.* at 749-50. Noting that the plaintiffs did not dispute "that their securities fraud claims could be brought by a plaintiff with proper standing," the court appeared to rest its decision on the notion that the Section 1964(c) bar operated solely on the "conduct" alleged, not the party bringing the RICO claim. *Id.* at 749; *see also Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006) (holding Section 1964(c)'s prohibition applies to individual and class action suits alike). Other cases have extended *Howard*'s reasoning to cover situations where there would be no independent private right of action under the securities laws. For instance, some plaintiffs trying to evade the Section 1964(c) bar have argued that there is no private right of action to sue for aiding-and-abetting liability under 15 U.S.C. § 78t(e), and that, therefore, a RICO claim against an alleged aider-and-abettor should be allowed to proceed. In *Pritikin v. Comerica Bank*, No. C 09-03303 JF (RS), 2009 WL 3857455 (N.D. Cal. Nov. 17, 2009), the court rejected this argument, holding that § 1964(c) applies equally to RICO claims premised upon allegations of aiding and abetting securities fraud:

> The language of the statute simply does not require that, for a RICO claim to be barred, the plaintiff who sues under RICO must be able to sue under securities laws, or that the conduct 'actionable as securities fraud' on which the plaintiff relies to establish the RICO violation must be that of the defendant.

*Id.* at *4 (quoting *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 281-82 (S.D.N.Y. 2009)) (quotation marks omitted).

Courts have construed the PSLRA bar in Section 1964(c) to prohibit the dissection of said claims into their offending and non-offending components, as long as some component may be characterized as in furtherance of, or in connection with, actionable securities fraud. "In determining whether the PSLRA bars a civil RICO claim, courts view the complaint in its entirety and reject the invitation to parse the plaintiff's allegations." *Eagletech Commc'ns Inc. v. Citigroup, Inc.*, No. 07-60668-CIV, 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008) (citing *Bald Eagle*, 189 F.3d at 329) (holding that the PSLRA bars an action where some, but not all, of the predicate acts are actionable as securities fraud, because "[a]llowing such surgical presentation of the cause of action . . . would undermine the congressional intent behind the RICO Amendment"). For example, in *Sell v. Zions First Nation Bank*, No. CV 05-684 PHX SRB, 2006 WL 322469 (D. Ariz. Feb. 9, 2006), the court dismissed a RICO claim that was predicated upon mail fraud, wire fraud, and also bank fraud, explaining that the alleged instances of bank fraud were "but tentacles of the same octopus, sufficiently connected to securities fraud to bar their use as predicate acts." *Id.* at *11; *see also Bald Eagle*, 189 F.3d at 330 ("Conduct

*LINK TO DOCS #* 40, 86, 102 & 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8724-GHK (RCx) | Date | July 12, 2010 |
|---|---|---|---|
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities").

The standard for applying the Section 1964(c) bar thus appears to be quite flexible. This is in accord with *SEC v. Zandford*, 535 U.S. 813 (2002), in which the Supreme Court held that: (1) Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 must be broadly construed "to effectuate [their] remedial purposes"; and (2) that fraud is "in connection with the purchase or sale of any security" provided that "the scheme to defraud and the sale of securities *coincide.*" *Id.* at 820 (emphasis added); *see also Ling v. Deutsche Bank, AG*, No. 04 CV 4566(HB), 2005 WL 1244689, at *3 (S.D.N.Y. May 26, 2005) ("[T]he requirement is satisfied when the securities transactions and breaches complained of coincide and are not independent events.") (citation omitted). In *Levinson v. PSCC Services, Inc.*, No. 3:09-CV-00269 (PCD), 2009 WL 5184363 (D. Conn. Dec. 23, 2009), the court explained that even if the purchase or sale of securities was but one component in a larger fraudulent scheme, the scheme was still actionable as securities fraud. *Id.* at *7-8. The court explained that "[i]n determining whether misrepresentations coincided with the purchase or sale of securities, courts consider the allegedly fraudulent scheme as a whole." *Id.* at *7. Since the fraudulent scheme involved inducing plaintiffs to invest in a common fund and then permitting Ponzi scheme mastermind Bernie Madoff to use the funds to purchase securities, the integrated fraudulent scheme constituted actionable, indivisible securities fraud, which could not support a RICO claim under Section 1964(c). *Id.* ("Defendants' alleged misrepresentations and omissions relate to Madoff's purported purchase and sale of securities with Plaintiffs' funds. Defendants essentially induced Plaintiffs to invest their assets in the common investment fund (and induced them to keep their assets there in the long run) based on false reassurances that their assets would be safe.").

Finally, the PSLRA bar has been applied to RICO claims based upon, in whole or in part, alleged "pump and dump" schemes. *See, e.g.*, *Trachsel v. Buchholz*, No. C-08-02248 RMW, 2009 WL 86698, at *1, 4-5 (N.D. Cal. Jan. 9, 2009); *ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*, No. C05-2010Z, 2006 WL 1789029, at *8 (W.D. Wash. June 27, 2006) (holding "purported RICO claims [were] fundamentally based on allegations in the nature of securities fraud claims" where complaint made "multiple references to the alleged 'gypsy swap' scheme, the issuance of allegedly false press releases to increase the market value of . . . stock, and the alleged use of a 'pump and dump' scheme that harmed 'unwary and misinformed investors'"). Furthermore, in *Eagletech*, the court found the § 1964(c) exception applicable where the plaintiffs had alleged stock manipulation, including the engineering of trades of Eagletech stock at manipulated prices, the laundering and transporting of illegal profits, market manipulation, including naked short sales, a Ponzi scheme, and the payment of kickbacks. 2008 WL 3166533 at *2-6.

The FAC appears to state conduct that would be actionable as securities fraud as the RICO predicate acts, thereby triggering the Section 1964(c) bar. As to Claims 1 and 2, the promissory notes Warnock and Davies received pursuant to the series of loans they made to Gizmondo are arguably securities. The Securities Exchange Act of 1934 defines "security" broadly to include: "*any note*, stock, treasury stock, security future, bond, debenture, . . . transferable share, investment contract, voting-trust

LINK TO DOCS # 40, 86, 102 & 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8724-GHK (RCx) | Date | July 12, 2010 |
|---|---|---|---|
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof) . . . , or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." 15 U.S.C. § 78c(a)(10) (emphasis added). Additionally, the FAC alleges the granting of a stock option to Plaintiffs. *The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 593-94 (2001) (holding granting of an option constitutes a purchase of a "security" covered by Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5); *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 751 (1975) ("[H]olders of . . . options, and other contractual rights or duties to purchase . . . securities" are "'purchasers' . . . of securities for purposes of Rule 10b-5"). As to Claims 3 and 4, the GetFugu enterprise is alleged to be a "'pump and dump' scheme," in which various individuals and business entities acted in concert to fraudulently induce the purchase of securities with false and/or misleading press releases, valuation reports, and other misrepresentations. (FAC ¶¶ 1, 142-43, 151-90; RCS ¶¶ 177, 182).

Since the Parties have not briefed this issue, we will afford them an opportunity to do so. The Parties are hereby **ORDERED** to file supplemental briefs addressing the PSLRA bar in 18 U.S.C. § 1964(c). The Parties **SHALL** address the following issues in their supplemental briefs: (1) whether the Section 1964(c) bar applies to the Tiger/Gizmondo enterprise and/or the GetFugu enterprise, with specific and detailed arguments as to (a) whether securities have in fact been sold or purchased in connection with each enterprise, and (b) the type of securities fraud implicated; (2) whether a RICO claim may be disaggregated, such that a part of the scheme that would *not* constitute actionable securities fraud *in isolation* may nevertheless proceed, and whether such a proposition would have any applicability in this case; (3) whether any Defendant named in Claims 1 through 4 of the FAC has been criminally convicted "in connection with the fraud" challenged by Claims 1 through 4 (*see* 18 U.S.C. § 1964(c)); and (4) any other issue the Parties believe might be relevant to the line of legal precedent we have identified and its effect on our ultimate disposition of the Motions.

Defendants, CVA, the English Defendants, and O'Connor **SHALL** file their supplemental brief, which **SHALL NOT exceed twenty-five (25) pages**, **within fourteen (14) days hereof**. Counsel for Defendants, CVA, the English Defendants, and O'Connor **SHALL** file **ONLY ONE** integrated joint supplemental brief of no more than the above page limit. Plaintiffs **SHALL** file their supplemental brief, which **SHALL NOT exceed twenty-five (25) pages**, **within fourteen (14) days thereafter**. Defendants **SHALL** file any **REPLY** to Plaintiffs' supplemental brief, which **SHALL NOT exceed ten (10) pages**, **within seven (7) days thereafter**.

**IT IS SO ORDERED.**

                                                      _____ : _____

*LINK TO DOCS #* 40, 86, 102 & 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8724-GHK (RCx) | Date | July 12, 2010 |
|---|---|---|---|
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

Initials of Deputy Clerk    IR for Bea