Name: Richard J. Oparil
Address: 2550 M Street, NW
City, State, Zip: Washington, DC 20037
Phone: 202-457-6496
Fax: 202-457-6496
E-Mail: ROparil@pattonboggs.com

☐ FPD  ☐ Appointed  ☐ CJA  ☐ Pro Per  ☒ Retained

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

SIMON DAVIES, et al.,
PLAINTIFF(S),

v.

GETFUGU, INC., et al.,
DEFENDANT(S).

CASE NUMBER: 2:09-cv-8724-GHK (FMOx)

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that ___plaintiffs Simon Davies and David Warnock___ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   Amended Civil Minutes (Dkt. No. 162)

☒ Judgment (specify):
   (Dkt. No. 163)

☐ Other (specify):

Imposed or Filed on ___August 26, 2010___. Entered on the docket in this action on ___August 26, 2010___.

A copy of said judgment or order is attached hereto.

September 24, 2010
Date

/s/ Richard J. Oparil
Signature
☐ Appellant/ProSe  ☒ Counsel for Appellant  ☐ Deputy Clerk

Note: The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

E-FILED: 8/26/10

JS - 6

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON DAVIES, et al. | CASE NO. CV 09-8724-GHK (RCx) |
| Plaintiffs, | |
| v. | JUDGMENT |
| GETFUGU, INC., et al., | |
| Defendants. | |

Pursuant to our August 26, 2010 Order granting the Motion to Dismiss in part, Claims 1, 2, 3, and 4 of the First Amended Complaint ("FAC") are **DISMISSED with prejudice**. Pursuant to 28 U.S.C. § 1367(c)(3), all of the remaining state law claims in the FAC are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

DATED: August 26, 2010

GEORGE H. KING
United States District Judge

Case 2:09-cv-08724-GHK -FMO  Document 164   Filed 09/24/10   Page 3 of 12   Page ID
 #:1547
Case 2:09-cv-08724-GHK-FMO   Document 162   Filed 08/26/10   Page 1 of 10   Page ID
 #:1534

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
|---|---|---|---|

| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* |
|---|---|

**Presiding: The Honorable**  **GEORGE H. KING, U. S. DISTRICT JUDGE**

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

None  None

**Proceedings:**  (In Chambers) AMENDED Order re: Defendants' Motions to Dismiss

Plaintiffs Simon Davies ("Davies") and David Warnock ("Warnock" and collectively, "Plaintiffs") have filed an action against various individual and corporate defendants, bringing, *inter alia*, claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and RICO conspiracy, *id.* § 1962(d), as individuals and on behalf of GetFugu, Inc. (Dkt. No. 20). The First Amended Complaint ("FAC") includes two direct claims for RICO and RICO conspiracy targeting the alleged Tiger Telematics, Inc./Gizmondo Europe, Ltd. ("Tiger/Gizmondo") enterprise, and two derivative claims for RICO and RICO conspiracy targeting the alleged GetFugu, Inc. ("GetFugu") enterprise, which Plaintiffs have called a "'pump and dump' scheme." (*Id.* ¶¶ 1, 191-240).[1]

This matter is now before us on the following motions: (1) Defendant Corporate Valuation Advisors, Inc.'s ("CVA") Motion to Dismiss for Failure to State a Claim (Dkt. No. 40); (2) Defendants Begbies Traynor Group PLC, David Rubin & Partners LLP, Paul Davis, Timothy Dolder, David Hudson, Asher D. Miller, and David Antony Rubin's (collectively, "the English Defendants") Motion to Dismiss Plaintiffs' FAC for Lack of Personal Jurisdiction and for Failure to State a Claim (Dkt. No. 86); (3) Defendants GetFugu, Inc., Carl Freer ("Freer"), Alan J. Bailey, Anneli Freer, Ericka Freer, Jason Irwin, Richard Jenkins, Ivan D. Kozhuharov, Donald A. Kurz, Mark LaPresle, Derek Norton, Christine Peters, Michael J. Solomon, Leatham Steran, Bernard Stolar, Eric Stoppenhagen, and Chuck Timpe's (collectively, "Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Dkt. No. 102); and (4) Defendant Michael O'Connor's ("O'Connor") Motion to Dismiss Plaintiffs' FAC for Lack of Personal Jurisdiction (Dkt. No. 99) (collectively, "the Motions").[2] We have considered the papers filed in support of and in opposition to this Motion, as well as the Parties' supplemental briefing which we ordered on July 12, 2010, and deem this matter appropriate for

---

[1] Only Warnock, not Davies, holds GetFugu shares, so only he has derivative standing to pursue Claims 3 and 4 on behalf of GetFugu. (FAC ¶ 47).

[2] O'Connor has joined in Defendants' motions. (Dkt. No. 99).

Case 2:09-cv-08724-GHK -FMO Document 164 Filed 09/24/10 Page 4 of 12 Page ID #:1548
Case 2:09-cv-08724-GHK-FMO Document 162 Filed 08/26/10 Page 2 of 10 Page ID #:1535

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
|---|---|---|---|

| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* |
|---|---|

resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts in this case, we will repeat them only as necessary. Accordingly, we rule as follows.

## I. Factual Background

With respect to the direct RICO and RICO conspiracy claims against the Tiger/Gizmondo enterprise (Claims 1 and 2), Plaintiffs allege that they were fraudulently induced to make a series of loans to Gizmondo, a subsidiary of Defendant Tiger. (FAC ¶¶ 73-77). Warnock alone and also Warnock and Davies together received promissory notes in connection with each loan. (*Id.* ¶ 73). When the maturity date for one of the loans was extended by six months, a "1,027,069 stock option" was given to Plaintiffs presumably as consideration for the delayed repayment. (*Id.* ¶ 73(f)). Plaintiffs allege that "Tiger failed to disclose to Davies and Warnock before entering into the agreements that in the first quarter of 2005, the quarter in which it launched Gizmondo in the United Kingdom, Tiger lost $163.8 million." (*Id.* ¶ 75). They further allege that: "Reflecting Freer's pattern and practice of looting companies, $151.1 million of that loss arose from general and administrative operating expenses. By contrast, the company spent just $455,092 on goods sold." (*Id.* ¶ 75). Accordingly, they assert that they were "fraudulently induced" to make the loans to Gizmondo. (*Id.* ¶ 77). Plaintiffs have allegedly never been repaid for these loans. (*Id.* ¶ 86).

With respect to the derivative RICO and RICO conspiracy claims against the GetFugu enterprise (Claims 3 and 4), the directors and officers of GetFugu, formerly known as Madero, Inc. (*id.* ¶ 148), along with various other individual and corporate defendants, including CVA, allegedly made numerous misrepresentations or material omissions of fact in their public disclosures and press releases upon which investors, such as Warnock, relied when purchasing GetFugu shares. (*Id.* ¶¶ 47 (stating Warnock owns 500,004 shares of GetFugu stock), 142-43, 151-90; Second Amended RICO Statement ["SARS"] ¶¶ 177, 182). Buoyed by CVA's allegedly negligent and/or fraudulent report regarding eight patent applications of allegedly questionable value, the GetFugu enterprise's members allegedly falsely promoted the current and projected value of the company and its technological acquisitions to secure new investment. (FAC ¶¶ 151-61). As another example, GetFugu allegedly announced it had entered into a strategic relationship with Illusive Media ("IM"), a marketing and advertising firm, which IM quickly denied as false. (SARS ¶ 182). Plaintiffs allege that: "GetFugu's public announcement was false and misleading and another attempt to try to artificially manipulate the stock price of the company for the purpose of its unlawful 'pump and dump' scheme." (*Id.*). Plaintiffs also allege that GetFugu officers and directors deliberately misrepresented the financial health of the company and failed to disclose to its shareholders that the SEC is purportedly investigating GetFugu for federal securities law violations. (FAC ¶¶ 172, 181, 186-87; SARS ¶ 186). As alleged, these representations and material omissions in press releases and valuation reports induced investors to purchase GetFugu securities. (FAC ¶ 152).

## II. RICO Actions Predicated Upon Securities Fraud

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

    The RICO statute expressly states that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). This exception does not apply to "any person that is criminally convicted in connection with the fraud . . . ." *Id.* However, there is no allegation that any party to this action has been criminally convicted "in connection with the fraud" challenged by Claims 1 through 4.[3] *Id.* Section 107 of the Private Securities Litigation Reform Act ("PSLRA"), which was enacted in 1995, added this exception (referred to herein as the "PSLRA bar"). Pub. L. No. 104-67, 109 Stat. 737 (1995). Crucially, "the amendment was intended not simply 'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent a plaintiff from 'plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-369, at 47 (1995)); *see also Swartz v. KPMG, LLC*, 401 F. Supp. 2d 1146, 1151 (W.D. Wash. 2004), *rev'd on other grounds by* 476 F.3d 756, 760-61 (9th Cir. 2007) ("The rule that a plaintiff cannot assert a RICO claim based on predicate acts that sound in securities fraud is applicable even if . . . the claim is plead [*sic*] as a matter of mail fraud or wire fraud.") (citation omitted); *Seippel v. Jenkins & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 372 (S.D.N.Y. 2004) ("In amending RICO, Congress was clear in stating that the PSLRA was meant to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim.") (citations and quotation marks omitted).

    Since its enactment, courts have sought to clarify the scope of the PSLRA bar. In *Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000), *cert. denied*, 531 U.S. 828 (2000), the Ninth Circuit rejected a claim that the PSLRA bar did not apply where the plaintiff had no standing to bring an independent securities fraud claim on the same factual allegations. *Id.* at 749-50. Noting that the plaintiffs did not dispute "that their securities fraud claims could be brought by a plaintiff with proper standing," the court appeared to rest its decision on the notion that the PSLRA bar operated solely on the "conduct" alleged, not the party bringing the RICO claim. *Id.* at 749; *see also Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006) (holding Section 1964(c)'s exclusion applies to individual and class action suits alike). Other cases have extended *Howard*'s reasoning to cover

---

[3] Plaintiffs argue that Defendant Mikael Ljungman was convicted in connection with the fraud at issue in this case. However, Ljungman was convicted in Denmark in connection with the IT Factory fraud. (Oparil Decl., Exs. 2-4). However, the RICO claims in this action do not seek to recover damages for that particular fraud, but rather for the Tiger/Gizmondo enterprise and GetFugu enterprise's alleged misconduct. The IT Factory fraud bears a highly tenuous connection to the above-captioned case, and it is included in the FAC as context, not as a reason to impose liability pursuant to Claims 1 through 4. (FAC ¶¶ 116-26). In fact, IT Factory "perpetuated a four-year long fraud that involved more than $170 million in fraudulent revenues from nonexistent leasing contracts," which is manifestly not the basis of this suit. (*Id.* ¶ 117). Additionally, in their Opposition, Plaintiffs state merely that "[t]he income received by Media Power from the IT Factory fraud was used to develop so-called augmented reality technology, which is the alleged basis for GetFugu's technology." (Opp'n 18 (citing SARS ¶¶ 107, 117)).

Case 2:09-cv-08724-GHK -FMO   Document 164   Filed 09/24/10   Page 6 of 12   Page ID
#:1550
Case 2:09-cv-08724-GHK-FMO   Document 162   Filed 08/26/10   Page 4 of 10   Page ID
#:1537

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
| Title | Simon Davies, et al. v. GetFugu, Inc., et al. | | |

situations where there would be no independent private right of action under the securities laws. For instance, some plaintiffs trying to evade the PSLRA bar have argued that there is no private right of action to sue for aiding-and-abetting liability under 15 U.S.C. § 78t(e), and that, therefore, a RICO claim against an alleged aider-and-abettor should be allowed to proceed. In *Pritikin v. Comerica Bank*, No. C 09-03303 JF (RS), 2009 WL 3857455 (N.D. Cal. Nov. 17, 2009), however, the court rejected this argument, holding that § 1964(c) applies equally to RICO claims premised upon allegations of aiding and abetting securities fraud:

> The language of the statute simply does not require that, for a RICO claim to be barred, the plaintiff who sues under RICO must be able to sue under securities laws, or that the conduct 'actionable as securities fraud' on which the plaintiff relies to establish the RICO violation must be that of the defendant.

*Id.* at *4 (quoting *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 281-82 (S.D.N.Y. 2009)) (quotation marks omitted). This rule makes sense in light of the fact that the SEC after all, if not a private plaintiff, can bring suit.

Courts have construed the PSLRA bar in Section 1964(c) to prohibit the dissection of said claims into their offending and non-offending components, so long as some component may legitimately be characterized as in furtherance of, or in connection with, actionable securities fraud. "In determining whether the PSLRA bars a civil RICO claim, courts view the complaint in its entirety and reject the invitation to parse the plaintiff's allegations." *Eagletech Commc'ns Inc. v. Citigroup, Inc.*, No. 07-60668-CIV, 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008) (citing *Bald Eagle*, 189 F.3d at 329) (holding that the PSLRA bars an action where some, but not all, of the predicate acts are actionable as securities fraud, because "[a]llowing such surgical presentation of the cause of action . . . would undermine the congressional intent behind the RICO Amendment"). For example, in *Sell v. Zions First Nation Bank*, No. CV 05-684 PHX SRB, 2006 WL 322469 (D. Ariz. Feb. 9, 2006), the court dismissed a RICO claim that was predicated upon mail fraud, wire fraud, and also bank fraud, explaining that the alleged instances of bank fraud were "but tentacles of the same octopus, sufficiently connected to securities fraud to bar their use as predicate acts." *Id.* at *11; *see also Bald Eagle*, 189 F.3d at 330 (holding that any RICO claim which targets what amounts to an integrated securities fraud scheme cannot be strategically severed into its mail and wire fraud components and allegedly independent securities fraud components) ("[C]onduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities."). Similarly, in *Burton v. Ken-Crest Servs.*, 127 F. Supp. 2d 673 (E.D. Pa. 2001), the court held that the "[p]laintiff cannot magically revive his claim by picking out discreet details of his allegations and then claiming that they are not actionable as securities fraud." *Id.* at 676-77.

The standard for applying the PSLRA bar is flexible. This is in accord with *SEC v. Zandford*, 535 U.S. 813 (2002), in which the Supreme Court held that: (1) Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and its corresponding regulation, SEC Rule 10b-5, must be broadly construed "to effectuate [their] remedial purposes"; and (2) that fraud is "in connection with the

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
|---|---|---|---|

| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* |
|---|---|

purchase or sale of any security" provided that "the scheme to defraud and the sale of securities coincide." *Id.* at 820 (emphasis added); *see also Ling v. Deutsche Bank, AG*, No. 04 CV 4566(HB), 2005 WL 1244689, at *3 (S.D.N.Y. May 26, 2005) ("[T]he requirement is satisfied when the securities transactions and breaches complained of coincide and are not independent events.") (citation omitted). In 2006, the Supreme Court reaffirmed that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff *or by someone else.*" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (emphasis added and citation omitted). Notably, in *Levinson v. PSCC Services, Inc.*, No. 3:09-CV-00269 (PCD), 2009 WL 5184363 (D. Conn. Dec. 23, 2009), the court explained that even if the purchase or sale of securities was but one component in a larger fraudulent scheme, the scheme was still actionable as securities fraud. *Id.* at *7-8. The court further stated that "[i]n determining whether misrepresentations coincided with the purchase or sale of securities, courts consider the allegedly fraudulent scheme as a whole." *Id.* at *7. Since the fraudulent scheme involved inducing the plaintiffs to invest in a common fund used by Ponzi scheme mastermind Bernie Madoff to purchase securities, the integrated fraudulent scheme constituted actionable, indivisible securities fraud, which could not support a RICO claim under Section 1964(c). *Id.* ("Defendants' alleged misrepresentations and omissions relate to Madoff's purported purchase and sale of securities with Plaintiffs' funds. Defendants essentially induced Plaintiffs to invest their assets in the common investment fund (and induced them to keep their assets there in the long run) based on false reassurances that their assets would be safe.").

Finally, the PSLRA bar has been applied to RICO claims based upon, in whole or in part, alleged "pump and dump" schemes. *See, e.g., Trachsel v. Buchholz*, No. C-08-02248 RMW, 2009 WL 86698, at *1, 4-5 (N.D. Cal. Jan. 9, 2009); *ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*, No. C05-2010Z, 2006 WL 1789029, at *8 (W.D. Wash. June 27, 2006) (holding "purported RICO claims [were] fundamentally based on allegations in the nature of securities fraud claims" where complaint made "multiple references to the alleged 'gypsy swap' scheme, the issuance of allegedly false press releases to increase the market value of . . . stock, and the alleged use of a 'pump and dump' scheme that harmed 'unwary and misinformed investors'"). Furthermore, in *Eagletech*, the court found the § 1964(c) exception applicable where the plaintiffs had alleged stock manipulation, including the engineering of trades of Eagletech stock at manipulated prices, the laundering and transporting of illegal profits, market manipulation, including naked short sales, a Ponzi scheme, and the payment of kickbacks. 2008 WL 3166533 at *2-6.

### III. Motion to Dismiss the RICO Claims

The RICO claims in the FAC rely in large part upon alleged conduct that would be actionable as securities fraud, thereby triggering the PSLRA bar. With respect to Claims 1 and 2, the promissory notes Warnock and Davies received pursuant to the series of loans they made to Gizmondo are arguably securities. The Securities Exchange Act of 1934 defines "security" broadly to include: "*any note*, stock, treasury stock, security future, bond, debenture, . . . transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
| Title | Simon Davies, et al. v. GetFugu, Inc., et al. | | |

the value thereof) . . . , or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; *but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.*" 15 U.S.C. § 78c(a)(10) (emphasis added). However, we need not ultimately decide whether the notes given to Plaintiffs fall within the nine-month maturity exception, because the fraudulent acts allegedly perpetrated by the Tiger/Gizmondo enterprise were "in connection with the purchase or sale of any security" under Section 10(b).

In *Quantum Technology Partners II, L.P. v. Altman Browning and Co.*, 2008 WL 4525769 (D. Or. Oct. 2, 2008), the court explained that:

> When determining whether conduct alleged in the context of a RICO claim is "conduct . . . actionable as fraud in the purchase or sale of securities," courts have looked to the Securities Exchange Act of 1983, 15 U.S.C. § 78j(b), which makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." Rule 10b-5 implements this provision and forbids the use "in connection with the purchase or sale of any security" of "any device, scheme, or artifice to defraud" or any other "act, practice, or course of business" that "operates . . . as a fraud or deceit." 17 C.F.R. § 240.10b-5.

*Id.* at *12. As previously noted though, the Supreme Court has broadly construed Section 10(b) to reach alleged fraud that merely "'coincide[s]' with a securities transaction—whether by the plaintiff *or by someone else.*" *Merrill Lynch*, 547 U.S. at 85 (emphasis added and citation omitted). Indeed, the Court further explained that "[t]he requisite showing . . . is deception in connection with the purchase or sale of any security, not deception of an identifiable purchaser or seller." *Id.* (citation and internal quotation marks omitted).

The alleged fraudulent inducement of Plaintiffs' loans is but one piece of the totality of the Tiger/Gizmondo enterprise's alleged fraudulent conduct. This alleged RICO enterprise is said to constitutes an integrated operation to attract and then misappropriate investments. Plaintiffs allege that "Freer and [Defendant Stefan] Eriksson used Tiger and Gizmondo and Tiger's other affiliates to enrich themselves and their associates at the expense of the companies and their creditors and stockholders." (FAC ¶ 68). They allege that Freer, Eriksson and their associates "developed elaborate schemes to divert corporate assets to their own personal use and benefit." (*Id.* ¶ 69). In one of several instances, Freer and his agents allegedly fraudulently induced the Palestine Investment Fund ("PIF") to purchase Tiger stock and falsely claimed that the certificates for these shares had been purchased from a "non-affiliated" entity, when in fact that entity was owned by Freer and his wife, Defendant Anneli Freer. (*Id.*). Moreover, Plaintiffs state that following allegedly false and misleading press releases "touting the prospects of Tiger, Gizmondo, and the Gizmondo product," Tiger raised $21.4 million in a stock sale.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

(*Id.* ¶¶ 71-72). As part and parcel of this scheme, Plaintiffs allege they were fraudulently induced to make a series of loans to a company that was being run for private gain, not shareholder wealth. (*Id.* ¶¶ 73-77).

Plaintiffs have not brought a simple breach of contract action for failure to repay under the terms of a loan agreement. Rather, they attempt to state a RICO claim based on all of the above predicate acts, including the alleged fraudulent inducement that caused them to make their loans. We adhere to *Bald Eagle*'s proposition that "conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities." 189 F.3d at 330. As in *Levinson*, even if part of the scheme could arguably be segregated as mail or wire fraud, we cannot consider such an act in isolation where it is clearly intended to facilitate the workings of a larger securities fraud scheme. 2009 WL 5184363, at *7-8 (finding investments in common fund sufficiently connected to Madoff's purchase of securities with money in said fund). In some circumstances, Freer and his associates induced stock purchases, and in others, they secured loans, but however the funds came in, they were allegedly siphoned off to insiders' accounts. This cycle allowed Freer to perpetuate a "pump and dump" scheme. (FAC ¶ 1). In *Ling*, the court emphasized the breadth of the securities fraud exception:

> If one predicate act alleges breaches of duty coincident with securities transactions then the whole scheme is subject to the PSLRA bar. Because here the Plaintiffs contend the wrongful acts were committed as part of a single fraudulent scheme, all of the components must be considered together for securities fraud purposes.

2005 WL 1244689, at *4. This logic applies with equal force here, where Plaintiffs' loans, PIF's stock sale, and other transactions completed by Tiger/Gizmondo all facilitated the continued operation of a "pump and dump" scheme.

In the alternative, Plaintiffs themselves were in fact given a security as part of the series of loan transactions with Gizmondo. The FAC alleges the granting of a stock option to Plaintiffs. (FAC ¶ 73(f)). The Supreme Court has held that the granting of an option constitutes a purchase of a "security" covered by Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 593-94 (2001). Additionally, in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), the Court explained that "holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been recognized as 'purchasers' or 'sellers' of securities for purposes of Rule 10b-5." *Id.* at 751. Here, Plaintiffs have alleged the series of loan agreements, the delay in repayment, and the addition of the option as just several of many components of a RICO enterprise's activity. The FAC itself seeks to link this conduct with respect to Plaintiffs to the broader pattern of racketeering activity alleged. Therefore, by their own allegations, there is a direct connection between the fraudulent inducement of Plaintiffs' loans and a securities transaction.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

However, even if we did not consider the granting of the option to give rise to actionable securities fraud, Plaintiffs cannot be heard to argue that the securities fraud exception to RICO does not apply to the Tiger/Gizmondo enterprise because they cannot bring a securities fraud claim themselves. Under clear Ninth Circuit precedent, even if these particular plaintiffs, Warnock and Davies, cannot bring a claim for actionable securities fraud, their RICO claim which is premised upon securities fraud must fail. *Howard*, 208 F.3d at 749; *see also In re Enron Corp. Secs., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 620 (S.D. Tex. 2003) ("The RICO Amendment bars claims based on conduct that could be actionable under the securities laws even when the plaintiff, himself, cannot bring a cause of action under the securities laws."); *Hemispherx Biopharma, Inc. v. Asensio*, No. CIV. A. 98-5204, 1999 WL 144109, at *4 (E.D. Pa. Mar. 15, 1999) ("The Court finds nothing in the language of the [PSLRA] to suggest that an exception will be made to the bar against securities fraud actions under RICO if a particular plaintiff cannot bring an action under the Securities Exchange Act, when others could bring an action on the basis of the same alleged conduct of the defendant."). Moreover, application of the PSLRA bar does not turn on whether or not a securities fraud claim can be successfully maintained. *Ostler v. Research Group, Inc.*, No. CIV. 98-356-JD, 1999 WL 1059684, at *6 (D. N.H. Apr. 20, 1999) (rejecting plaintiff's "plea to save his RICO claims at least until it is clear that his securities fraud claims will survive").

As to Claims 3 and 4, the GetFugu enterprise is alleged to be Freer's latest "'pump and dump' scheme," in which various individuals and business entities acted in concert to fraudulently induce the purchase of securities with false and/or misleading press releases, valuation reports, and other misrepresentations. (FAC ¶¶ 1, 142-43, 151-90; SARS ¶¶ 177, 182). This is an even clearer case for application of the PSLRA bar. Plaintiffs allege that Freer and his associates orchestrated the false and inflated valuation of certain intellectual property assets to induce further investment in the company, conduct that is clearly actionable as securities fraud. (FAC ¶¶ 151-61). Following the dissemination of that purportedly false valuation report by CVA, "[i]n April 2009, GetFugu raised $502,500 in a private placement of the company's securities." (*Id.* ¶ 152). Plaintiffs assert that "GetFugu used CVA's valuation to induce persons to invest in Madero [now known as GetFugu]." (*Id.*). We are not told precisely when Plaintiffs were induced to purchase shares in the company, but this claim is brought derivatively on behalf of GetFugu. Plaintiffs may in fact have merely been fraudulently induced to *retain* shares, which has been held not to satisfy the purchaser-seller rule for claims under Section 10(b). *See Binder v. Gillespie*, 184 F.3d 1059, 1066-67 (9th Cir. 1999); *Williams v. Sinclair*, 529 F.2d 1383, 1389 (9th Cir. 1975) (holding shareholders "who did no more than retain their shares[ ] . . . barred by the purchaser-seller rule from maintaining an action under Rule 10b-5"). However, even if Plaintiffs themselves cannot bring a claim for securities fraud, no RICO action may rest on these predicate acts. And moreover, as previously noted with respect to Claims 1 and 2, this integrated scheme, which Plaintiffs themselves have labeled an integrated "pump and dump scheme," is indivisible for purposes of the PSLRA bar. If, as a practical matter, acts of mail or wire fraud not themselves directly in connection with a purchase or sale of securities nevertheless furthered an overall securities fraud scheme, then a plaintiff cannot artfully plead around the PSLRA bar by carefully omitting the latter from the complaint. At any rate, the PSLRA bar has been uniformly applied to "pump and dump schemes" and Ponzi schemes, which will almost always entail certain fraudulent acts that are not directly connected to a

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

securities transaction, but nevertheless coincide with securities transactions, stock manipulation, or other independently actionable securities fraud. *See, e.g., Trachsel*, 2009 WL 86698, at *1, 4-5; *ITI Internet Servs., Inc.*, 2006 WL 1789029, at *8; *Eagletech*, 2008 WL 3166533 at *2-6.[4]

**IV.    Request for Leave to Amend**

Plaintiffs request leave to amend by adding securities fraud claims to their complaint. (Opp'n 22-24). However, in this procedural posture, we have not addressed any deficiencies in any of Plaintiffs' claims. Instead, we have found Claims 1 through 4 are precluded by the PSLRA bar in Section 1964(c).

Plaintiffs do not wish to cure identified defects, *i.e.* necessary factual allegations, in particular claims, but rather, to state entirely new and different claims that they chose not to bring in the alternative in their original Complaint and FAC. Our holding in this Order expresses absolutely no judgment as to whether these specific Plaintiffs may in fact bring a securities fraud claim. Moreover, Plaintiffs have not in fact set forth a proposed Second Amended Complaint ("SAC") or filed a noticed Motion for leave to amend. Accordingly, we have no basis upon which to decide whether the addition of such claims would be futile as the Reply contends. (Reply 6-8). Therefore, for purposes of this action, we hereby **DENY** leave to amend.[5]

**V.    Conclusion**

The defaults entered against Defendants Mark Champion, Media Power USA LLC, Hazina Ljungman, Mikael Ljungman, Dragon Phoenix China Ltd., and Tiger Telematics, Inc. are hereby **VACATED** pursuant to Federal Rule of Civil Procedure 55(c). (Dkt. Nos. 85, 86, 87, 88, 108, 109, 127). Due to the securities fraud exception, or PSLRA bar, in the RICO statute, no default judgment could be entered on the RICO claims stated against those Defendants. Accordingly, since Claims 1, 2, 3, and 4 are premised upon actionable securities fraud allegedly perpetrated by the Tiger/Gizmondo and GetFugu enterprises, these claims are hereby **DISMISSED with prejudice** pursuant to the PSLRA bar in 18 U.S.C. § 1964(c).

Having dismissed Claims 1 through 4 pursuant to the PSLRA bar, or securities fraud exception, contained in 18 U.S.C. § 1964(c), the only claims over which we have original jurisdiction, we hereby exercise our discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. These state law claims are **DISMISSED without prejudice** to their refiling in state court. 18

---

[4] In addition to Section 10(b) securities fraud, some of the conduct alleged pursuant to Claims 3 and 4 might also be actionable as stock price manipulation under 15 U.S.C. § 78i.

[5] The Parties should consider whether their time and resources would be better spent litigating the state law claims. If the recovery available under those claims does not materially differ from that which they would receive with additional federal claims, then we question the value of extended collateral litigation over whether various federal claims can be asserted.

Case 2:09-cv-08724-GHK -FMO   Document 164   Filed 09/24/10   Page 12 of 12   Page ID
 #:1556
Case 2:09-cv-08724-GHK-FMO   Document 162   Filed 08/26/10   Page 10 of 10   Page ID
 #:1543

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-8724-GHK (RCx) | Date | August 26, 2010 |
| Title | *Simon Davies, et al. v. GetFugu, Inc., et al.* | | |

U.S.C. § 1367(c)(3); *see also* 28 U.S.C. § 1367(d) (tolling statute of limitation on state law claims for at least 30 days from this dismissal without prejudice).

**IT IS SO ORDERED.**

-- : --

Initials of Deputy Clerk    Bea